[Civil No. 2840. Filed January 20, 1930.]

[283 Pac. 924.]

O. W. LITTLE, Appellant, v. EUGENE J. BROWN, Appellee.

Mr. Louis L. Wallace and Mr. David P. Hatch, for Appellant.

Mr. Carl G. Krook and Mr. John L. Schaefer, for Appellee.

ROSS, J.—This is an action brought by O. W. Little against Eugene J. Brown to recover the reasonable value of 20,000 shares of the capital stock of the Kaaba Mining & Milling Corporation, alleged to have been sold and delivered to Brown at his request by plaintiff's assignor, W. E. Little; said reasonable value being alleged to be $20,000. The defendant's answer denied that plaintiff's assignor "sold and delivered to the defendant twenty thousand (20,000) shares or any shares of capital stock, . . . " denied that "said alleged twenty thousand (20,000) shares . . . was reasonably worth the sum of twenty thousand ($20,000) dollars," denied "that there is now due and payable for said alleged twenty thousand (20,000) shares of said stock the said sum of twenty thousand ($20,000) dollars or any sum or at all," and denied that W. E. Little, seller, had assigned and transferred the demand to plaintiff or that plaintiff was the owner thereof; pleaded as a

separate answer that defendant had bought the said stock from plaintiff's assignor and paid for it in brokerage services rendered the said assignor. Upon the issues thus formed the trial was had before the court without a jury.

In the situation of the pleadings it was incumbent upon the plaintiff to show by competent evidence (1) that his assignor sold and (2) delivered to defendant 20,000 shares of the capital stock of the Kaaba Mining & Milling Corporation, (3) the reasonable value thereof, and (4) the assignment as alleged. The plaintiff's assignor testified, in substance, that he was president of the Kaaba Mining & Milling Corporation; that he caused to be issued 20,000 shares of such corporation's capital stock in the name of Eugene J. Brown & Company; that it was issued in such name under the direction of defendant; that it was assignor's personal stock; that he delivered the same to defendant; that the agreement was that defendant would pay him $10,000 upon delivery, but that when he was about to deliver the stock to defendant the latter represented that he would have to take the stock to his bank and deposit it as security, when he would return to assignor's office with the $10,000; that defendant did not return and did not pay him the $10,000, or any sum whatever. The defendant, called as a witness on behalf of plaintiff, admitted receiving the stock. The assignment was properly proved. The plaintiff then rested, whereupon defendant moved for judgment of dismissal upon the ground that plaintiff had failed to prove a cause of action against defendant. Against the earnest protest and resistance of the plaintiff, the court entered judgment dismissing the case without prejudice. Plaintiff has appealed and assigns, among other errors, the order and judgment of involuntary nonsuit.

It is clear to our minds that the court erred in granting the motion. The plaintiff when he rested had made out a *prima facie* case and, in the absence of any evidence to the contrary, was entitled to judgment. He had established by competent evidence the four essentials above enumerated to make out a cause of action. There was no evidence of the reasonable value of the stock. There was evidence showing, or tending to show, that the agreed value was $10,000. The court should have overruled the motion to dismiss because (1) he had no right to enter a judgment of involuntary nonsuit, and (2) under the evidence the plaintiff had made out a *prima facie* case.

It is contended that plaintiff's evidence showed, if anything, a sale of stock to Eugene J. Brown & Company, a partnership, of which Brown was a member, and not to Eugene J. Brown. This contention is based upon the fact that the certificate was made out in the name of the former. While this might be a circumstance tending to show the sale was to the partnership, it would not be sufficient to overcome the positive evidence that it was made to Brown himself. While the partnership might under some circumstances also be liable to the seller for the agreed value of the stock, if it received the fruits thereof, it would not relieve defendant from paying therefor if he agreed to do so.

We have said above that plaintiff was entitled to judgment. The rule seems to be that when a party declares on *quantum valebant,* as was the case here, and the evidence shows a specific contract, judgment for the agreed price is the measure of damages. This rule is stated thus in 5 Corpus Juris, 1411, Section 91:

"Where an express contract has been fully performed on plaintiff's part and nothing remains to be done under it but the payment of money by defendant, and plaintiff elects to sue on a general *assumpsit*

instead of declaring specially on the express contract, the measure of damages will be the rate of recompense fixed by the special contract. A recovery of a larger amount than that stipulated in the special contract is not permissible.''

Paragraph 519, Civil Code of 1913, reads as follows:

''At any time before the jury have retired the plaintiff may take a non-suit, but he shall not thereby prejudice the right of an adverse party to be heard on his own claim for affirmative relief; when the case is tried by the court, such non-suit may be taken at any time before the decision is announced.''

This provision of our statute has been construed by our court as prohibiting the entry of an involuntary nonsuit. The first case so deciding is *Bryan* v. *Pinney*, 3 Ariz. 34, 21 Pac. 332, in which the history of this provision is given. The ruling in *Bryan* v. *Pinney* was followed in *Roberts* v. *Smith*, 5 Ariz. 368, 52 Pac. 1120, and *Santa Fe etc. Ry. Co.* v. *Ford*, 10 Ariz. 201, 85 Pac. 1072, 1073. In the latter case the court said: ''Under our statutes the court has not authority to direct an involuntary nonsuit.'' In *Piper* v. *Taylor*, 17 Ariz. 351, 152 Pac. 863, following the rule of the above cases, we said that under the recognized Code practice an involuntary nonsuit cannot be allowed. We therein stated also that the proper course is to instruct the jury, or to have the court, upon a trial without a jury, to render a verdict or judgment, as the case may be, for the defendant.

The judgment will have to be reversed. The plaintiff contends we should enter judgment in his favor or remand the cause with directions to the trial court to do so. As authority for such procedure, he cites *Garrett* v. *Reid-Cashion Land & Cattle Co.*, 34 Ariz. 245, 270 Pac. 1044, and on motion for rehearing, 34 Ariz. 482, 272 Pac. 918. The situations are not

the same. There was no plea of payment in *Garrett v. Reid-Cashion,* as there is here. The contention in that case was that the plaintiffs had ratified the sale of their stock and it appeared upon that issue all of the evidence available was introduced in plaintiff's case. Again, the motion at the close of plaintiff's case was not for an involuntary nonsuit, but for the dismissal of the jury from the case and for judgment by the court. The judgment was not one of involuntary nonsuit.

In the present case, the court's error was made at the instance of defendant, but we think the ends of justice demand that he be permitted to submit evidence in support of his defenses. The cause is remanded, therefore, with directions that a new trial be granted, on condition that defendant first pay the costs of this appeal; otherwise that the judgment be entered for plaintiff.

There were many other assignments, but in view of the disposition of the case we do not deem it necessary to consider them.

LOCKWOOD, C. J., and McALISTER, J., concur.