152 P.2d 877

STATE ex rel. SANCHEZ et al. v. STAPLETON.

No. 4845.

Supreme Court of New Mexico.

Nov. 4, 1944.

Mechem & Hannett, of Albuquerque, and Claron E. Waggoner, of Socorro, for appellants.

Wilson, Brophy & Whitehouse and Louis C. Lujan, all of Albuquerque, for appellee.

THREET, Justice.

This is a proceeding in quo warranto brought by the District Attorney within and for the Seventh Judicial District of the State of New Mexico, upon the relation of Herman A. Sanchez and Helen P. Sanchez, his wife, against respondent, Lisandro Stapleton, to try the legal right of the respondent to hold the office of County Assessor of Socorro County, New Mexico. From a judgment in favor of respondent, discharging the writ and dismissing the cause, relators appeal.

Facts, as found by the trial court, necessary to a decision are:

That the relator, Herman A. Sanchez, was duly elected Assessor of Socorro County in the 1942 election and, on or about January, 1943, he qualified and took possession of the office. On or about the 15th of August, 1943, he was inducted into the Naval Service of the United States, and left the County of Socorro, and since that time he has been in the Naval Service performing services therein as a sailor, and has been absent from Socorro County, New Mexico. By reason of his induction into the service of the United States Navy and by reason of the duties imposed upon him in such service, he, since the 15th day of August, 1943, has failed to devote his time to the performance, in person, to the duties of such office.

Upon the 16th of August, 1943, at a duly called meeting of the Board of County Commissioners of Socorro County, the following resolution was duly made and adopted by the Board:

"Mr. Chairman, in accordance with Section 2 of Chapter 123 of Laws of 1943 of the State of New Mexico, we are empowered and directed to fill vacancies when a County Officer enters Military, Naval, United States Merchant Marine, or other armed service of the United States of America. The records show that the County Assessor, Herman A. Sanchez, of Socorro County has entered the armed services of the United States, therefore, a vacancy exists at this time and that he has abandoned such said office as County Assessor as shown by Sec. 1, Chapter 123 of Laws of 1943 of the State of New Mexico. Therefore, I move that Mr. Lisandro Stapleton be appointed to fill said vacancy until the said Assessor has been relieved from active duty in the armed services and has resumed the personal discharge of the duties of such public office. The appointee shall receive the salary and emolument with all power and authority granted by law to such assessors, and shall perform the duties in accordance with Section 2, Chapter 123 of Laws of 1943 of the State of New Mexico."

The respondent Lisandro Stapleton took the oath of office and filed a good and sufficient bond, as required by law, and accepted the appointment as assessor made by the board of county commissioners and, on the 23rd day of August, 1943, he took possession and entered upon the discharge of the duties of the office and since that time

has been in possession of the office of Assessor of Socorro County under his appointment. After the appointment of the respondent, to-wit: August 21, 1943, the Board of County Commissioners and respondent demanded of one Torres, who had been employed by the relator Herman A. Sanchez, as a deputy in the office, and in possession of the keys of the office, to deliver the keys to respondent so that he might take over the performance of the duties of the office. Torres refused to surrender the keys and the board of county commissioners, pursuant to advice of Claron E. Waggoner, District Attorney, and H. L. Bigbee, Assistant Attorney General, ordered that the lock on the door be broken and a new one be placed thereon. Upon the execution of this order the key to the new lock was delivered to respondent who, on August 23, 1943, took possession of the office without force or disturbance. That relator, Herman A. Sanchez, appointed Torres as a deputy in his office on the 25th day of January, 1943, where he served, drawing the entire allowance made by deputy hire for the Assessor of Socorro County, until the 15th day of August, 1943. Torres took no oath of office and filed no bond. He did not have a contract with the relator, Herman A. Sanchez, to serve for any definite time, but understood his employment was to be at the pleasure of the relator, Herman A. Sanchez.

The relator, Helen P. Sanchez, is the wife of Herman A. Sanchez and prior to August 14, 1943, she had, on a few occasions, done clerical work in the assessor's office, but had received no pay therefor. On August 14, 1943, prior to his induction into the Naval Service, the relator, Herman A. Sanchez, by an instrument in writing, appointed Helen P. Sanchez, Deputy Assessor, and assigned to her the salary and emoluments of the office. Her appointment was not approved by the Board of County Commissioners of Socorro County, but the instrument in writing was recorded in the office of the County Clerk of Socorro County.

Upon these findings, the trial court concluded that the respondent is entitled to the office of Assessor of Socorro County, New Mexico, with full power to perform the duties and functions thereof and to the fees and emoluments thereof, since the day upon which he filed his oath of office and bond and qualified as such officer. That the writ should be discharged and the cause dismissed.

Relators challenge the constitutionality of Chapter 123, of the 1943 New Mexico Session Laws, and assign the following errors:

"1. The trial court erred in refusing to hold that Chapter 123, Laws of 1943, violates the Supreme Law of the land because it penalizes a citizen for obeying that law in joining the armed forces of the United States when the country is at war.

"2. The trial court erred in refusing to find that Chapter 123, Laws of 1943, violates Article 20, Section 2, of the Constitution of New Mexico.

"3. The trial court erred in refusing to find that Chapter 123, Laws of 1943, violates Article 4, Section 27, of the Constitution of New Mexico.

"4. The trial court erred in refusing to find that Chapter 123, Laws of 1943, violates Article 7, Section 2, of the Constitution of New Mexico.

"5. The trial court erred in refusing to find that Chapter 123, Laws of 1943, forfeits the office of the appellant without due process of law.

"6. The trial court erred in finding that Chapter 123, Laws of 1943, repeals Sections 10-301 to 10-303, New Mexico Statutes Annotated, 1941."

We consider first the preliminary question, the right of the relators to maintain this suit. As to the relator, Herman A. Sanchez: First, because it is obvious that the act he challenges, as being unconstitutional, was passed primarily to preserve to him his office, the benefits to him outweighing the temporary suspension of his salary; second, because, without the saving clause in the act, he is in the attitude of violating 1941 Comp., Secs. 10-301 and 10-304.

As to the relator, Helen P. Sanchez, unless she is either injured or jeopardized by the operation of the statute, its constitutionality cannot be challenged by her. It is manifest that she must rely on her status as the legally appointed Deputy Assessor of Socorro County, and the operation of the statute would deprive her of that office, before she would be in a position to challenge its constitutionality. If her appointment, as deputy assessor, is void she cannot be heard to say that the act offends against her rights as no injury to her would flow from its operation. State ex rel. Davidson, State Highway Engineer v. Sedillo, County Treasurer, 34 N.M. 1, 275 P. 765.

To the latter proposition we direct our first discussion. She was appointed deputy assessor by her husband, Herman A. Sanchez, on the 14th day of August, 1943, who assigned to her the salary and emoluments of the office. This appointment is governed by the 1941 Comp., Secs. 10-110 and 10-111.

Section 10-110, provides:

"It shall hereafter be unlawful for any person elected or appointed to any public office or position under the laws of this state or by virtue of any ordinance of any municipality thereof, to employ as clerk, deputy or assistant, in such office or position, whose compensation is to be paid out of public funds, any person related by consanguinity or affinity within the third degree to the person giving such employment, unless such employment shall first be approved by the officer, board, council or commission, whose duty it is to approve the bond of the person giving such employment: Provided, that this act * * * shall not apply where the compensation of such clerk, deputy or assistant shall be at the rate of $600 or less a year, nor shall it apply to persons employed as teachers in the public schools."

Section 10-111, provides:

"No person so unlawfully employed shall be paid or receive any compensation from public funds, and such employment shall be null and void, and the person or persons giving such employment, together with his or their bondsmen, shall be liable for any and all moneys so unlawfully paid out."

▉ The appointment of the relator, Helen P. Sanchez, as Deputy Assessor of Socorro County, would be valid only upon two conditions, viz.: Where the appointment is approved by the officer, board, council or commission, whose duty it is to approve the bond of the party giving such employment; or where the compensation to be paid to such deputy is at the rate of $600 or less per annum. We notice judicially that the relator, Helen P. Sanchez, would have received a salary in excess of $600 per annum under her appointment as deputy assessor. 1941 Comp., Sec. 15-4103, provides for salaries of county officers, and the smallest salary provided for county assessor for any county within the State of New Mexico is the sum of $1500 per year and $900 additional for a deputy or deputies. Her appointment not being valid, as one coming within this condition, we next consider whether, regardless of the amount in salary she would have received, her appointment was nevertheless valid as one approved by the Board of County Commissioners.

▉ 1941 Comp., Sec. 15-3602, provides that the bond of the county assessor shall be approved by the board of county com-

missioners. Sec. 10-110, supra, provides that the employment of a person, of the class to which the relator, Helen P. Sanchez, belongs, as deputy, shall be unlawful unless such employment be first approved by the board whose duty it is to approve the bond of the county assessor; and Sec. 10-111, supra, provides that if neither of the above conditions are present, such employment shall be null and void. The trial court's finding that relator's appointment, as Deputy County Assessor, not being approved by the Board of County Commissioners must stand as an established fact, in this case, in the absence of any attack thereon by the relator. We hold that, since the appointment of the relator, Helen P. Sanchez, as Deputy County Assessor of Socorro County, was not approved by the Board of County Commissioners and it appearing that her salary would amount to more than $600 per annum such appointment is void and of no effect.

▉ Having failed to sustain her contention that she is the legally appointed Deputy Assessor, and it appearing that she will neither be injured nor jeopardized by the operation of the statute, which she questions, it follows that she cannot challenge its constitutionality. State ex rel. Davidson v. Sedillo, supra; 16 C.J.S., Constitutional Law, § 76, p. 157; Streit v. Lujan, 35 N.M. 672, 6 P.2d 205; In re Gibson, 35 N.M. 550, 4 P.2d 643; State v. Culdice, 33 N.M. 641, 275 P. 371; Asplund v. Hannett et al., 31 N.M. 641, 249 P. 1074, 58 A.L.R. 573, and Asplund v. Alarid, 29 N.M. 129, 219 P. 786.

Coming now to the relator, Herman A. Sanchez, it is a matter of common knowledge, of which we take judicial notice, that other similar situations have arisen and will arise in this State, and it was to meet this emergency that the Legislature enacted Chapter 123, of the 1943 New Mexico Session Laws, the obvious primary and fundamental purpose being to preserve to incumbents their offices despite their resulting failure to discharge the duties of their offices for the uncertain duration of the war; a further purpose being to provide against the disruptions of essential governmental services.

The Act, in part, provides:

"Section 1. Any incumbent of any public office or employment of the State of New Mexico, or of any of its departments, agencies, counties, municipalities or political subdivision whatsoever, who shall heretofore have entered or who hereafter shall enter military, naval, United States Merchant Marine, or other armed service of the United States of America, and who by reason of the duties imposed upon him in such service shall fail to devote his time to the performance in person of the duties of such office or employment shall, by entering or continuing in such service, be deemed to have waived and renounced the salary of, and to have abandoned such office or employment until, but only until, he shall have been relieved from active duty in such service and shall have resumed the personal performance of the duties of such public office or employment.

"Section 2. The officer, agent, employee, board or other agency of the State of New Mexico, or of its departments, agencies, counties, municipalities or political subdivisions, who is by law authorized to fill ordinary vacancies in the public office or employment so temporarily abandoned as provided in Section 1 hereof is hereby authorized, empowered and directed to appoint to the public office or employment, so abandoned as provided in section 1 hereof, another person who shall receive the salary and perform the duties thereof until, but only until, the former incumbent shall have been relieved from active duty in the armed services and shall have resumed the personal discharge of the duties of such public office or employment.

"Section 3. Any incumbent of any public office or employment of the State of New Mexico, or of any of its departments, agencies, counties, municipalities or political subdivisions whatsoever, who shall accept any public office or employment, whether within or without the State, other than service in the armed forces of the United States of America, for which a salary or compensation is authorized, or who shall accept private employment for compensation and who by reason of such other public office or employment or private employment shall fail for a period of thirty successive days or more to devote his time to the usual and normal extent during ordinary working hours to the performance of the duties of such public office and employment, shall be deemed to have resigned

from and to have permanently abandoned his public office and employment.

"Section 4. The officer, agent, employee, board or other agency of the State, or of its departments, agencies, counties, municipalities or political subdivisions, who is by law authorized to fill ordinary vacancies in the public office or employment so permanently abandoned, as provided in section 3 hereof, is hereby authorized, empowered and directed to appoint to such public office or employment some qualified person who shall thereafter receive the salary and perform the duties thereof until the expiration of the term of the former incumbent or until his successor shall have been elected, appointed or otherwise chosen and qualified or until the former incumbent shall have been relieved from active duty in the armed services and shall have resumed the personal discharge of the duties of such public office or employment.

"Section 5. Any public office or service, other than service in the armed forces of the United States of America, and any private employment of the nature and extent designated in section 3 hereof is hereby declared to be incompatible with the tenure of public office or employment."

▮▮▮▮ Relator contends that the Act violates Art. 20, Sec. 2, and Art. 4, Sec. 27, of the New Mexico Constitution. Section 2 of Art. 20, provides:

"Every officer, unless removed, shall hold his office until his successor has duly qualified."

And Sec. 27 of Art. 4, provides:

"No law shall be enacted giving any extra compensation to any public officer, servant, agent or contractor after services are rendered or contract made; nor shall the compensation of any officer be increased or diminished during his term of office, except as otherwise provided in this constitution."

But for the saving clause in the Act, the relator would offend against Secs. 10-301 and 10-304, supra, since the application of either would deprive him of his office and emoluments thereof. The policy of the law is that public officers, elected to public office upon their ability to execute the office, and upon the confidence imposed in them by the people should devote their time and energies to the duties of the office to which they have been elected. Moreover, and perhaps even more conclusive support is found by the argument that relator is in no position to seek the relief he prays for—to challenge the provision of the Act which diverts temporarily the emoluments of the office to the respondent who is performing all the duties of the office, during the non-performance and temporary absence of the relator, when the application of either Sec. 10-301 or 10-304, supra, would forever forclose him from asserting any right to either the salary or emoluments of the office.

May relator allege that, for whatever cause, he is not giving, and probably will not give for a long, though uncertain time, any of his time to the duties of his office, and yet be permitted to keep for himself,

or to his wife by assignment, the salary and emoluments of the office to the exclusion of the respondent, a temporary substitute provided by law, who is performing the duties of the office? We think it may fairly be assumed that the Legislature, which created this office, conceived that provision should be made to protect all County and State officials as they may be called from their several duties to serve their Country in its hour of need from the effect of their necessary violation of the statutory provisions, which otherwise would subject them to removal; that this was the primary purpose and fundamental objective in the passage of Chapter 123 of the 1943 Session Laws, there can be no doubt. This being the aim and purpose of the Legislature, we are of the opinion that a beneficiary of this saving legislation may not challenge the power of the Legislature, which created his office, to enact a law which includes the manifest, just and equitable provision that the salary of the office shall be paid the legally appointed substitute, who temporarily performs the duties of the office.

■ The great weight of authority sustains the holding; First, that one may not attack the constitutionality of the law which was enacted primarily for his benefit and which, as we have pointed out, so operated on the whole, and when, second, it appears that relator would be violating other provisions of the law and subjecting himself to removal but for the protecting provisions of the law he here assails. 16

C.J.S., § 76, Constitutional Law, p. 164; Frazier v. Elmore, County Judge et al., Tenn., 173 S.W.2d 563; People v. Board of Education of City of Chicago, 349 Ill. 390, 182 N.E. 455; Stein v. Kentucky State Tax Comm., 266 Ky. 469, 99 S.W.2d 443; State v. Thrift Oil & Gas Co., 162 La. 165, 110 So. 188, 51 A.L.R. 261; Central Union Trust Co. of New York v. Blank, 168 Minn. 312, 210 N.W. 34.

It may be said that the acceptance of a place in the Military Service was not voluntary, that it is in response to the demand of his Country in a war emergency. But the application of the principle involved is not so determined. The reason for the rule is based upon the necessity for the discharge of official duties by those to whom they have been entrusted, in order that orderly government may be uninterruptedly maintained. The reasons for the abandonment, or failure to perform, are not controlling factors. It was in recognition of this involuntary element and the patriotic nature of the service relator is rendering that the Legislature has made this just and generous exceptional provision for the preservation to him, and others in the same class, his or their office upon being discharged from the military service. Of this he cannot be heard to complain.

■ While the trial court does not state, as a ground for denying the relator the relief sought, that the Act was passed by the Legislature for his benefit and, for that reason, he cannot challenge its constitutionality; yet that fact is so obvious, as we

472

have shown, that it should be noticed by us; and, especially, in view of the well recognized rule that the constitutionality of a statute will not be determined in any case, unless such determination is absolutely necessary in order to determine the merits of the suit in which the constitutionality of such statute has been drawn in question. 16 C.J.S., Constitutional Law, § 94, p. 208; State v. Tinsley, 34 N.M. 458, 283 P. 907; State v. Culdice, supra.

 There is no merit in relators' sixth assignment of error. They requested the trial court to conclude, "Chapter 123 of the Laws of 1943 is a general statute and cannot be regarded as repealing by implication the special statute dealing with a particular matter of limited scope, to-wit, County or District officers." The trial court refused to so conclude. Nowhere in the record, so far as we are able to ascertain, did the trial court affirmatively rule that the later (1943) Act accomplished a repeal of the Removal Statute. It is only by implication arising on the refusal of the requested conclusion, supra (erroneously called a finding in relators' brief), that they are able to impute to the trial court a holding that repeal by implication resulted. Respondent in his brief agrees with relators that both statutes may be upheld and that they are not irreconcilable. In this, as appears from what has been said, we agree with counsel for both parties. Why the trial court refused the requested conclusion of law, whether because it was deemed unimportant or inapplicable, or for some other reason, we, of course, cannot know. What we do say is that the trial court rendered a correct judgment, and the error, if the refusal be appraised as contended by relators, is harmless. The comment of the Territorial Court in Lockhart v. Wills, 9 N.M. 344, at page 359, 54 P. 336, at page 341, is so applicable to the situation confronting us on this claim of error, that we quote it as follows:

"It is therefore clear that to remand this case for a new trial would be an empty ceremony. The result of a new trial could not but bring the same result. The assigning of a wrong reason for an act by the court below is not error if the act done was, in law, right."

For the reasons stated, the judgment of the district court will be affirmed, and

It is so ordered.

SADLER, C. J., and MABRY, BICKLEY, and BRICE, JJ., concur.