210 P.2d 938

HOGUE et al. v. SUPERIOR UTILITIES,
Inc., et al.

No. 5176.

Supreme Court of New Mexico.

Oct. 25, 1949.

Glen G. Hilford, Hot Springs, for appellants.

Douglass K. Fitzhugh, Hot Springs, for appellees Superior Utilities, Inc., and Jane Sickle Lewis.

McGHEE, Justice.

The appellants owned all of the stock of the defendant corporation, which operates a gas distribution system in Hot Springs, New Mexico. They sold the stock to the defendant George W. Lewis pursuant to a contract entered into on March 27, 1946, and received in payment therefor cash, property, the assumption by the corporation of a mortgage due an Albuquerque bank the payment of which had been guaranteed by them, and the note of the corporation to the plaintiffs for $18,973.87 payable $1,000 annually beginning April 1, 1947, secured by mortgages on the personal and real property of the corporation.

Later the corporation issued certificates for nine shares of its stock to George W. Lewis, eight shares to his wife, Jane Sickle Lewis, and one share to his brother, Carlton T. Lewis.

Default was made in the interest payments due on October 1, 1947, and January 1, 1948, and the plaintiffs declared the entire indebtedness due under an acceleration clause in the mortgages and filed an action seeking their foreclosure, and also asked reimbursement for $600 paid on the mortgage to the Albuquerque bank.

The defendant corporation and Jane Sickle Lewis answered admitting the execution and delivery of the note and mortgages but claimed that it was ultra vires and void, and that the corporation received no consideration therefor. By cross complaint it sought the recovery of $2,443.50 in meter deposits left with it by customers but which the plaintiffs had in their possession until it was applied on the note. It also sought the recovery of $906 paid by it as a commission for the benefit of the plaintiffs, and also the sum of $1,777.85 it had paid on the note before suit was filed.

The defendant Lunsford filed a disclaimer and the complaint was dismissed as to him. The plaintiffs also dismissed their complaint against the defendants Cunningham, El Paso National Bank and Harrison.

It was stipulated that the note and mortgages were executed and delivered by the defendant corporation without submission to or the permission of the Public Service Commission of the State of New Mexico, as required by Sec. 72-506, N.M.S.A.1941. The trial court concluded that they were therefore void under the provisions of Sec. 72-511, N.M.S.A.1941 and cancelled them. It also gave the corporation judgment against the plaintiffs for the sum of $2,443.51 representing the meter deposits in their hands at the time of the transfer of

454

the stock which they had credited on the note, but denied recovery as to the other items set up in the cross complaint.

Apparently the parties to the stock transaction were not aware of the fact that the permission of the Public Utility Commission was required before a public utility could mortgage its property to secure an indebtedness due in more than eighteen months until about the time the defendant filed a motion for a summary judgment, and the plaintiffs then asked permission to amend and set up that the defendant George W. Lewis was the sole owner of the stock of the corporation at the time of the execution and delivery of the note. Ruling on the motion was deferred until the hearing when another motion was filed asking that they be allowed to make George W. Lewis a party and asking that they be given a vendor's lien on the stock. The motion was denied by the trial court.

Sec. 72-301, N.M.S.A.1941, declares the public policy of this state as to the regulation of public utilities and reads as follows:

"72-301. Declaration of policy.—(A) Public utilities as hereinafter defined, are affected with the public interest in that, among other things,

"(1) A substantial portion of their business and activities involves the rendition of essential public services to large numbers of the general public.

"(2) Their financing involves the investment of large sums of money, including capital obtained from many members of the general public.

"(3) The development and extension of their business directly affects the development, growth, and expansion of the general welfare, business and industry of this state.

"(B) It is the declared policy of this state that the public interest, the interest of consumers, and the interest of investors require the regulation and supervision of such public utilities to the end that reasonable and proper services shall be available at fair, just, and reasonable rates, and to the end that capital and investment may be encouraged and attracted so as to provide for the construction, development and extension of proper plants and facilities for the rendition of service to the general public and to industry."

The applicable section of our statutes relating to the issuance of stocks, securities and indebtedness are Sections 72-506, 72-508, and 72-511, N.M.S.A.1941, and read as follows:

"72-506. Issuance, assumption, or guarantee of securities.—The power of a public utility to issue, assume or guarantee securities, and to create liens on its property situated within this state is a special privilege, hereby subjected to the supervision and control of the commission as hereinafter in this act (§§ 72-301–72-1105) set

forth. A public utility, when authorized by order of the commission and not otherwise, may issue stocks and stock certificates and may issue, assume or guarantee other ·securities payable at periods of more than eighteen (18) months after the date thereof, for the following purposes and no other: For the acquisition of property; for the construction, completion, extension or improvement of its facilities; for the improvement or maintenance of its service; for the discharge or lawful refunding of its obligations; for the reimbursement of moneys actually expended for said purposes from income or from any other moneys in the treasury not secured by or obtained from the issue, assumption or guarantee of securities, within five (5) years next prior to the filing of an application with the commission for the required authorization; or for any of the aforesaid purposes."

"72-508. Exempted securities.—A public utility may issue securities, other than stock or stock certificates, payable at periods of not more than eighteen (18) months after the date of issuance of same, and secured or unsecured, without application to or order of the commission, but no such securities so issued shall in whole or in part be refunded by any issue of stocks, stock certificates or other securities having a maturity of more than eighteen (18) months, except on application to and approval of the commission."

"72-511. Securities void unless approved.—All securities issued, assumed or guaranteed without application to and approval of the commission, except the securities mentioned in section 20 (§ 72-508) of this act, shall be void."

As we held in Delgado v. Delgado, 42 N.M. 582, 82 P.2d 909, 118 A.L.R. 1175, ordinarily where parties to illegal contracts are in pari delicto, a court will leave them where it finds them, whether the contract is executory or executed, refusing relief to both. There is, however, an exception to this rule where the public interest is involved, and in such a case affirmative relief will not be denied, although one of the guilty parties may benefit. 13 C.J. Contracts, § 441, 17 C.J.S., Contracts, § 278a. As above stated, the trial court granted affirmative relief in cancelling the note and mortgages, and also in allowing recovery of the meter deposits. The question for determination is whether the general rule or the exception controls.

It will be noted Section 72-301 declares it to be the public policy of the state to require the strict regulation of the financial affairs of public utilities, to the end that they may be adequately financed and, among other things, render service at reasonable rates. Section 72-506 declares that the power to issue, assume or guarantee securities, and to create liens on its property situated within this state is a special

privilege subject to the supervision and control of the commission. Section 72-508 exempts securities, secured or unsecured, which are payable in not more than eighteen months. Section 72-511 declares that all securities, other than those exempted, issued without application to and approval by the commission shall be void.

The plaintiffs say that the Superior Utilities, Inc., was a one man corporation owned by George W. Lewis after his purchase of the stock and that it should not be allowed to urge the invalidity of the note and mortgages. We agree that debts should be paid, but we are confronted by the positive provisions of our Public Utility Act above set out. The plaintiffs contend that securities issued in violation of the act are voidable only, and that under the facts of this case we should so construe it. We proceed to a consideration of these contentions.

The plaintiffs cite our holding in State v. Southern Pacific Company, 34 N.M. 306, 281 P. 29, that statutes will be construed to prevent injustice, and say we should avoid a strict construction of the statute requiring the approval of the Public Service Commission before long term securities may be issued, to the end that a one man or family corporation may be held liable where its stockholders obtained the benefits of the transaction. This argument appeals to us but we are confronted by the legislative declaration of public policy.

In discussing the question of whether an act was void or voidable Judge Cooley stated in Beecher v. Marq. & Pac. R. M. Co., 45 Mich. 103, 108, 7 N.W. 695, 697: "If it is apparent that an act is prohibited and declared void on grounds of general policy, we must suppose the legislative intent to be that it shall be void to all intents; while if the manifest intent is to give protection to determinate individuals who are sui juris the purpose is sufficiently accomplished if they are given the liberty of avoiding it."

The statement was quoted with approval by Mr. Justice Zinn in Kyle v. Chaves, 42 N.M. 21, 29, 74 P.2d 1030, in passing upon the question of whether the act of a treasurer in assigning a tax sale certificate was void or voidable.

Experience has taught that public utility companies cannot be allowed to contract indebtedness at will and run their affairs as it may please them, and when the legislature passed the 1941 Act for their control it gave the Public Service Commission broad powers over them. The statute is mandatory in form and declares the public policy of the state. As the intent and language is plain we must give it effect. Indebtedness created or stocks issued without permission of the regulatory bodies in states having similar statutes have been held void in Davis v. Watertown National Bank, Tex.Civ.App., 178 S.W. 593, P.U.R.

1915E, 531; Jones v. Abernathy, Tex.Civ. App., 174 S.W. 682; New York C. R. Co. v. Stevenson, 277 Ill. 474, 115 N.E. 633; Attorney General v. Massachusetts Pipe Line Gas Co., 179 Mass. 15, 60 N.E. 389; Augusta Trust Co. v. Federal Trust Co., 1 Cir., 153 F. 157; and in Re New York & R. Gas Co. (N.Y.) P.U.R.1918F, 439.

■ Without passing upon the liability of the purchaser Lewis if suit be brought against him, we must hold that the note and mortgages are void so far as the defendant corporation is concerned, and the ruling of the trial court on this point was correct.

The plaintiffs next urge that the trial court erred in granting the defendant utility company judgment for the meter deposits.

This money had been deposited by customers to guarantee payment of their accounts, and as they might cease the purchase of gas they were entitled to a refund from the corporation of the amount deposited, less anything due on account. The plaintiffs had deposited this money in their individual accounts and instead of paying it over to the utility company they applied it on the note and mortgage. The corporation was liable to its customers for the amount due each from this trust fund.

■ The plaintiffs say that the utility company is a one man or family corporation, and ask us to disregard the corporate entity, and cite State Trust & Savings Bank et al. v. Hermosa Land & Cattle Co., 30 N.M. 566, 240 P. 469, and United States Gypsum Co. v. Mackey Wall Plaster Co., 60 Mont. 132, 199 P. 249. If the public utility feature and our statutes relating to indebtedness created by public utilities were not present, such argument would be very persuasive, but the fact remains that the note on which this money was credited was void under our statutes. To deny affirmative relief on this item would be to clear the road for evasions of the mandatory features of the Public Utility Act. We hold that the action for the recovery of these deposits comes within the exception to the general rule.

The next error claimed is on account of the refusal of the trial court to allow the plaintiffs to amend the complaint to make George W. Lewis a party defendant and assert a vendor's lien on the stock acquired by the Lewis family.

■ This application came late in the case and we cannot say that the court abused its discretion in denying it.

■ The last claim of error is the refusal of the trial court to allow the plaintiffs judgment for $600 paid on a first mortgage to the Albuquerque bank. This money was paid by the plaintiffs, as they claim, to protect their second mortgage which we have held to be void. It is stated by the plaintiffs in their brief that the mortgage to the bank was also given without the per-

mission of the Public Service Commission. The ruling of the court on this item was also correct.

The judgment will be affirmed, and it is so ordered.

BRICE, C. J., and LUJAN, SADLER and COMPTON, JJ., concur.